# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

JOSE VERDUZCO,

Petitioner,

v.

MIKE MINOR,

Respondent.

______________________________________/

1:11-cv-00286-BAM (HC)

ORDER DENYING FIRST AMENDED PETITION FOR WRIT OF HABEAS CORPUS, DIRECTING CLERK OF COURT TO ENTER JUDGMENT IN FAVOR OF RESPONDENT, AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY

[Doc. 13]

Petitioner is proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Pursuant to 28 U.S.C. § 636(c)(1), the parties have consented to the jurisdiction of the United States magistrate judge. Local Rule 305(b).

## PROCEDURAL HISTORY

On September 23, 2008, the Fresno County District Attorney filed a juvenile wardship petition (Welf & Inst. Code § 602, subd. (a)), charging Petitioner with first degree residential burglary, assault with intent to commit rape, and sexual battery by restraint. Petitioner was sentenced to a total term of 7 years and four months imprisonment.

Petitioner filed a timely notice of appeal. On September 10, 2009, the California Court of Appeal, Fifth Appellate District reversed and stayed the 6 year term of imprisonment for the residential burglary, and affirmed the judgment in all other respects. The California Court of Appeal denied rehearing on September 23, 2009.

On November 19, 2009, the California Supreme Court denied review.

On July 25, 2011, Petitioner filed a post-conviction collateral petition in the California Supreme Court. The petition was denied on February 15, 2012.

Petitioner filed the instant petition for writ of habeas corpus on February 16, 2011. After the action was stayed pending the return to state court, Petitioner filed a first amended petition on April 26, 2012.

Respondent filed an answer to the first amended petition on September 5, 2012. Petitioner did not file a reply.

STATEMENT OF FACTS[1]

> The victim knew fifteen-year-old J.V. from school and she has done social things with him. On September 19, 2008, the victim went with J.V. and two other people to the store. On their way home, the victim returned to her house. At about 11:00 a.m., when she was home alone, doing her homework and listening to the radio in the living room, she heard a whistle outside. She looked and saw J.V. and the two other people. The victim's front door was open, but the screen door was closed. J.V. walked toward the front door and told her he wanted to talk to her. She opened the screen door slightly and tried to go outside, but J.V. "pulled himself in." She did not invite him in.
>
> They stood right next to each other in the living room, about four feet from the front door. J.V. said, "'Let's do this, let's do this.'" The victim understood that he was referring to sex, and she refused. He said, "'Why not?'" She responded, "'[Bec]ause I already have a boyfriend.'" J.V. asked her multiple times as he stood right next to her. She said, "'No, I have a boyfriend. I am not going to cheat on him. I don't do that.'" He said, "'Well, your boyfriend is not here. He is not going to see you.'" J.V. continued to tell her, "'Let's do this.'"
>
> The victim became annoyed and tired of J.V.'s repeated prodding, so she grabbed her cell phone. J.V. asked her what she was doing and she told him she was just checking the time. In fact, she secretly started her cell phone's two-minute recorder. She then held the cell phone under her other arm as she recorded their conversation. J.V. continued to ask her for sex. He asked her if she "wanted to bust a 69" and if she "wanted it take it from the back."
>
> J.V. kept pushing her toward the couch and, with his final push, she lost her balance and fell onto the couch in a seated position. He sat right next to her and started rubbing her "bottom." He rubbed her breasts over her T-shirt, then he rubbed them under her bra. He said, "'Can we just do this? ... Let's just do it.'" She said, "'No, I don't want to.'" He quit touching her when she moved away and got up from the couch. He got up too, stood next to her and continued to request sex, but he did not touch her again.
>
> The victim walked toward the front door and J.V. followed her. He was still saying, "'Let's just do this. Nobody is here.'" The victim could not see the

---

[1] This statement of facts is taken from the September 10, 2009, California Court of Appeal, Fifth Appellate District opinion and is presumed correct. 28 U.S.C. § 2254(e)(1).

other two people any longer; they had left. The victim set her cell phone down and told J.V. she was going to turn on the water outside, an excuse to get J.V. out of her house. He grabbed her cell phone and followed her out as she pretended to adjust the water. J.V. said he was leaving. The victim said, "'[J.V.], give me back my phone.'" He said, "'Naw, you can come and get it.'" She repeatedly demanded that he give her the phone and he repeatedly refused and told her to come and get it. He said she would have to follow him to get it back, and he walked out of the gate.

The victim felt she could not follow J.V. because she was alone and her house key was in her room. But she was afraid he would run away with her cell phone. She stayed at the gate and pretended to lock it. She got the regular telephone from inside her house and she called her boyfriend. She could still see J.V. walking away. She asked her boyfriend to call her cell phone. When her cell phone started to ring, J.V. teased her saying, "'Do you want your phone?'" she cussed at him and told him to give it to her. He told her to come and get it. She ran after him, but he walked faster. Finally, about 10 houses down the street from her house, J.V. left the cell phone on the ground, told her to go get it, and he walked away.

The victim grabbed her cell phone and went back to her house. She locked all the doors. She was crying. She took a shower, but she "still felt like he was rubbing on [her], touching [her]," so she took another shower. She kept quiet because she was scared.

A few hours later, she confided in her neighbor, and the neighbor told her to call the police. The victim did not want to be known as a snitch, but she was really scared. She thought telling her parents was the worst thing because she was also scared of them. She called the police later that afternoon.

**Defense Evidence**

J.V. testified that he knew the victim through school and friends. On September 19, 2008, he talked to the victim at school. She told him she was going to be home alone later, and he could come by. After school, J.V. went to see his friend, B., and they watched television. J.V., B., and B.'s girlfriend decided to go to the liquor store. On their way, they stopped by the victim's house and B. whistled. The victim came out of the house and B. asked her if she wanted to go with them. They all went to the store and the victim bought something for them. They walked back and the victim went into her house. She told them they could come back and smoke at her house. J.V., B., and B.'s girlfriend stopped by someone's house, but found no marijuana to buy, so they went back to B.'s house.

J.V. and B. got tired of watching television. At that time, J.V., B., B.'s girlfriend and another friend, C., went back to the victim's house. B. whistled for the victim again as they waited outside her front gate. When she came out and told them to come in, they all entered the yard and went inside the house because "[i]t was allowed for them to walk in." The victim did not open the door for J.V.; the door was already open and she was seated on the couch. They all sat down. The victim sat in a rocking chair. J.V. was talking to B. and the victim was talking to C. The victim asked J.V. to go to the back room. He said, "[N]o why, when we can just sit here and talk[?]" The victim asked him again and again until he "finally got tired of it and just got up and went back there [to a room]." While they were in the room, "[e]verybody else was just sitting down in the living room, I guess, talking."

J.V. asked the victim if she was sure that she wanted to have sex because he did not want to get into trouble. She said she was sure. J.V. felt "kind of awkward," but they proceeded to have sex. The victim took off her clothes and J.V. unbuttoned his pants. They had intercourse for at least five minutes. J.V. did not hold any part of the victim's body; he was holding himself up. "[B]ut then in [J.V.'s] head [he] felt like this was a setup, well, who asks you to come over just like-and starts bugging you to go to a back room. So [J.V.] stopped, []buttoned his pants, and just left the room." He looked at the victim and "you can see the look in her eyes, like-the look in her eyes, like she was getting mad or something like that." J.V. "just told her that [he] didn't feel right being [there] and that [he] got to go." "[He] just walked out. [He] didn't even look, bother looking back. [He] just walked out, told [his] friend [B. he had] to go, [he didn't ] want to be [there] no more." J.V.'s friends did not get up, so J.V. left the house himself. B. came after him and grabbed his hand. B. said, "'Where are we going? '" J.V. told him, "'We got to go because I feel like this is a setup.'" He said he did not feel right being there. B. said "'[A]ll right,'" and he told the others to get up and go.

On cross-examination, J.V. testified that from what he had heard, the victim did not have a boyfriend, and she did not tell him that she did. J.V. first became suspicious of a setup when he was walking down the hall with the victim to the back room, but even though he was suspicious, he entered the dark room, put on a condom he had in his pocket, and had sex with the victim for about 5 minutes. During those five minutes, he kept thinking that this could be a setup.

J.V. never had the victim's cell phone and he never teased her by taking it away.

On redirect, J.V. explained that he had sex with the victim despite his suspicions because he did not want his friends to think he was scared.

**Rebuttal Evidence**

The victim testified that no one other than J.V. was in her house that day, and C. was not present at all. The victim denied ever asking J.V. to have sex with her. She said he had never been in any bedroom in her house and she had never had sex with him.

(Ex. A, to Answer, People v. J.V., No. F056619, 2009 Cal.App. Unpub. LEXIS 7301 (Cal. App. Sept. 10, 2009) (nonpub.) at *1-*9.)

DISCUSSION

I. Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. The challenged conviction arises out of the Fresno County Superior

Court, Juvenile Division, which is located within the jurisdiction of this Court. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320, 327 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *cert. denied,* 522 U.S. 1008 (quoting Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir. 1996). The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

II. Standard of Review

Where a petitioner files his federal habeas petition after the effective date of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), he can prevail only if he can show that the state court's adjudication of his claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;
> or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "Federal habeas relief may not be granted for claims subject to § 2254(d) unless it is shown that the earlier state court's decision "was contrary to" federal law then clearly established in the holdings of [the Supreme] Court." Harrington v. Richter, __ U.S. __, 131 S.Ct. 770, 785 (2011) (citing 28 U.S.C. § 2254(d)(1) and Williams v. Taylor, 539 U.S. 362, 412 (2000). Habeas relief is also available if the state court's decision "involved an unreasonable application" of clearly established federal law, or "was based on an unreasonable determination of the facts" in light of the record before the state court. Richter, 131 S.Ct. 785 (citing 28 U.S.C. § 2254(d)(1), (d)(2)). "[C]learly established ... as determined by" the Supreme Court "refers to the holdings, as opposed to the dicta, of th[at] Court's decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. at 412. Therefore, a "specific" legal rule may not be inferred from Supreme Court precedent, merely because such rule might be logical given that precedent. Rather, the Supreme Court case itself must have "squarely" established that specific

legal rule. Richter, 131 S.Ct. at 786; Knowles v. Mirzayance, __ U.S. __, 129 S.Ct. 1411, 1419 (2009). Moreover, the Supreme Court itself must have applied the specific legal rule to the "context" in which the Petitioner's claim falls. Premo v. Moore, __ U.S. __, 131 S.Ct. 733, 737 (2011). Under § 2254(d)(1), review is limited to the record that was before the state court adjudicated the claim on the merits. Cullen v. Pinholster, __ U.S. __, 131 S.Ct. 1388, 1398 (2011). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Richter, 131 S.Ct. at 786.

"Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceedings, § 2254(d)(2)." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003). Both subsections (d)(2) and (e)(1) of § 2254 apply to findings of historical or pure fact, not mixed questions of fact and law. See Lambert v. Blodgett, 393 F.3d 943, 976-77 (2004).

Courts further review the last reasoned state court opinion. See Ylst v. Nunnemaker, 501 U.S. 979, 803 (1991). However, "[w]here a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." Richter, 131 S.Ct. at 784.

III. Insufficient Evidence to Support Convictions

A. Residential Burglary

Petitioner contends there was insufficient to support his conviction of residential burglary because there was no evidence that he entered the victim's home with the intent to commit a sexual assault or any other felony.

The California Court of Appeal, Fifth Appellate District issued the last reasoned decision and denied the claim, stating:

> "'To determine the sufficiency of the evidence to support a conviction, an appellate court reviews the entire record in the light most favorable to the prosecution to determine whether it contains evidence that is reasonable, credible, and of solid

value, from which a rational trier of fact could find the defendant guilty beyond a reasonable doubt.'" (*People v. Bolden* (2002) 29 Cal. 4th 515, 553.) We must draw all reasonable inferences in support of the judgment. (*People v. Wader* (1993) 5 Cal.4th 610, 640.) It is not our function to reweigh the evidence, reappraise the credibility of witnesses, or resolve factual conflicts, as these are functions reserved for the trier of fact. We look for substantial evidence, and we may not reverse a conviction for insufficiency of the evidence unless it appears that upon no hypothesis whatever is there sufficient substantial evidence to support the conviction. (*People v. Bolin* (1998) 18 Cal.4th 297, 331.)

> Although we review the whole record, "[t]he uncorroborated testimony of a single witness is sufficient to sustain a conviction, unless the testimony is physically impossible or inherently improbable." (*People v. Scott* (1978) 21 Cal.3d 284, 296; *People v. Panah* (2005) 35 Cal.4th 395, 489.) Furthermore, "'"[c]ircumstantial evidence may be sufficient to connect a defendant with the crime and to prove his guilt beyond a reasonable doubt.'" [Citations.]' [Citations.]" (*People v. Bradford* (1997) 15 Cal.4th 1229, 1329.) If the circumstances, plus all the logical inferences the jury might have drawn from them, reasonably justify the jury's findings, our opinion that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment. (*Ibid*.; *People v. Panah*, *supra*, at pp. 487-488.)
>
> This same standard applies in determining the sufficiency of the evidence to support the true finding of a juvenile court. (*In re Roderick P*. (1972) 7 Cal.3d 801, 809.)
>
> Residential burglary occurs when a person enters an inhabited dwelling with the intent to commit larceny or any felony. (§ 459.) Here, there was ample evidence that [Petitioner] entered the victim's house with the intent to commit a sexual assault. The evidence established that [Petitioner] knew the victim was home alone and, from the moment he pushed himself into her house, he began his relentless pursuit to engage in sexual acts with her. He immediately started telling her, "'Let's do this, let's do this.'" When she would not accommodate him, he pushed her onto the couch and forcibly groped her. This evidence supported the inference that J.V. entered the victim's house with the intent to have sexual contact with her, regardless of whether she was a willing partner or not. Thus, the evidence was sufficient to support the juvenile court's finding that J.V. entered with the intent to commit a felony.

(Ex. A at *9-*12.)

The law on insufficiency of the evidence claim is clearly established. The United States Supreme Court has held that when reviewing an insufficiency of the evidence claim on habeas, a federal court must determine whether, viewing the evidence and the inferences to be drawn from it in the light most favorable to the prosecution, any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). Sufficiency claims are judged by the elements defined by state law. Id. at 324, n. 16. A federal court may only overturn a state court decision if it was "objectively unreasonable." Coleman v. Johnson, 132 S.Ct. 2060, 2062, 2065 (2012) (per curiam) (state court determination that jury's

finding was not so insupportable as to fall below the threshold of bar rationality is entitled to considerable deference on habeas review) (citations omitted); see also Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir. 2005). Jackson claims "face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference." Coleman v. Johnson, 132 S.Ct. at 2062.

Here, the Court finds there was sufficient evidence presented at trial for a rational jurist to conclude that Petitioner had the intent to commit sexual assault when he entered the victim's residence. The evidence included the fact that Petitioner entered the residence when he knew the victim was alone and immediately upon entering persisted that she engage in sexual acts with him despite her repeated and unequivocal rejections. While persisting for sex, Petitioner pushed the victim to the couch and forcibly groped her on top and underneath her clothing. Thus, there was sufficient evidence to find Petitioner entered the residence with the intent to commit a sexual assault. Petitioner merely disagrees with the guilty determination but fails to demonstrate that the appellate court's decision was unreasonable. Accordingly, this Court finds the state court's determination of this issue was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

B. Assault with Intent to Commit Rape

Petitioner also argues there was insufficient evidence to show he had the requisite intent to rape the victim. He claims the evidence demonstrated that he only intended to seek and obtain consensual sex from her.

In the last reasoned decision, the California Court of Appeal rejected the claim stating the following:

> Assault with intent to commit rape "requires proof that [the defendant] intended to have sexual intercourse with [the victim] and to use force to overcome her resistance. [Citation.] (*People v. Craig* (1994) 25 Cal.App.4th 1593, 1597.) The essential element of assault with intent to commit rape is the intent to commit the act against the victim's will. (*People v. Maury* (2003) 30 Cal.4th 342, 399-400.) The requisite intent may be shown by the defendant's statements, by his conduct, and by the circumstances surrounding the commission of his conduct. (*People v. Craig*, *supra*, at p. 1597.) "If, at any point during the incident, defendant entertains the intent to have sexual intercourse with the victim by force, the crime of assault with intent to commit rape is complete. It makes no difference whatsoever that he later abandons that intent." (*People v. Trotter* (1984) 160

> Cal.App.3d 1217, 1223, fn. omitted.) The defendant need not employ all of his force, and the victim need not resist fully or violently. (*Id*. at p. 1222; *People v. Greene* (1973) 34 Cal.App.3d 622, 651, fn. 7.) "The question whether the intent existed is one for the [trier of fact] to determine from the conduct of the defendant and the surrounding circumstances, and a determination by the court is permissible only when the facts afford no reasonable ground for an inference that the intent existed. [Citation.]" (*People v. House* (1958) 157 Cal.App.2d 151, 155; *see People v. Greene*, *supra*, at p. 649; *People v. Roth* (1964) 228 Cal.App.2d 522, 532.)
>
> In *People v. Craig*, *supra*, 25 Cal.App.4th 1593, we found sufficient evidence of intent to rape where the defendant followed the victim as she drove home and then told her he had mistaken her for someone else. Instead of leaving, he pushed the victim onto the driver's seat, placed his hand under her sweater, and "touch[ed] both of her breasts outside her bra." The attack was then interrupted. (*Id*. at p. 1596.) We concluded that the evidence raised the inference that the defendant would have continued to pursue sexual intercourse by force had he not been interrupted. (*Id*. at p. 1600.) "All of [the defendant's] conduct was consistent with [the intent to commit rape]. Nothing he did or said indicated that he intended only to place his hands on her body or to accomplish some sexual act short of or different from intercourse. While other reasonable inferences also might be drawn, it was for the [trier of fact], not us, to draw them." (*Id*. at p. 1604.)
>
> In this case, a rational trier of fact reasonably could have concluded that J.V. had the specific intent to rape the victim. The evidence supported the inference that his repeated prodding for sexual acts constituted demands rather than mere requests. He pushed his way into the victim's house, relentlessly demanded sex, forced the victim onto the couch, and subjected her to unwanted sexual contact until she was able to get away. The fact that his pursuit was unaffected by the victim's repeated refusals suggested that he did not intend to wait for her consent. Thus, his incessant demands and his forcible sexual contact raised the reasonable inference that, at some point during the incident, he intended to use force to overcome the victim's unwillingness to have sexual intercourse. The evidence also supported the inference that J.V. would have continued to pursue sexual intercourse by force had the victim not been able to get away from him. The fact that he abandoned his intent to use force after she got away did not negate his previous intent. In sum, there was a "reasonable ground for an inference that the intent existed." (*People v. House*, *supra*, 157 Cal.App.2d at p. 155), and the possibility that the evidence could also support a contrary inference does not require reversal (*People v. Bradford*, *supra*, 15 Cal.4th at p. 1329).

(Ex. A, at *12-*15.)

Viewing the evidence in the light most favorable to the prosecution, and for the reasons explained by the state appellate court, there was sufficient evidence presented at Petitioner's trial to support the finding that he was guilty of assault with intent to commit rape. Petitioner forced his way into the victim's home, repeatedly insisted that she engage in sexual relations with him, forced her onto the couch, and touched her over and under her clothing. Such evidence is sufficient to support his conviction for assault with intent to commit rape. As stated by the appellate court, the mere fact that Petitioner did not succeed in his demands because the victim

was able to escape, does not negate the evidence supporting his intent to commit the rape. Accordingly, the state courts' determination of this issue was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

C. Sexual Battery by Restraint

Petitioner further contends there was insufficient evidence to support his conviction for sexual battery. The California Court of Appeal disagreed and held the following:

> [Petitioner] asserts that there was insufficient evidence that he restrained the victim within the meaning of section 243.4, subdivision (a). He notes that he stopped his advances when the victim moved away and stood up, and he continued begging for sexual favors.
>
> Sexual battery by restraint consists of the following elements: (1) a person touched an intimate part of the victim, (2) the touching was against the victim's will, (3) the touching was done with the specific intent to cause sexual arousal, gratification, or abuse, and (4) the touching occurred while the defendant unlawfully restrained the victim. (§ 243.4, subd. (a); *People v. Elam* (2001) 91 Cal.App.4th 298, 309-310.) A person is unlawfully restrained under section 243.4 subdivision (a) "when his or her liberty is being controlled by words, acts or authority of the perpetrator aimed at depriving the person's liberty, and such restriction is against the person's will; a restraint is not unlawful if it is accomplished by lawful authority and for a lawful purpose, as long as the restraint continues to be for a lawful purpose. The 'unlawful restraint required for violation of section 243.4 is something more than the exertion of physical effort required to commit the prohibited sexual act.' [Citation.]" (*People v. Arnold* (1992) 6 Cal.App.4th 18, 28 (*Arnold*).)
>
> In *Arnold*, cited by [Petitioner], the defendant was a school teacher who went jogging with a 17-year-old female high school student who was infatuated with him. (*Arnold*, *supra*, 6 Cal.App.4th at p. 22.) The defendant's sexual advances initially consisted of pulling the student toward him, grabbing her buttocks, and fondling her breasts. The student willingly accompanied the defendant and did not object to these initial acts. (*Id*. at pp. 22, 29.) The court concluded that these acts did not constitute unlawful restraint under section 243.4. (*Id*. at p. 30.)
>
> *Arnold,* however, is distinguishable from this case. Here, from the start, the victim repeatedly refused J.V.'s demands for sex. J.V. pushed her onto the couch and subjected her to unwanted sexual touching until she was able to get away from him. He rubbed her buttocks and her breasts, first over her shirt, then under her bra. The victim again told J.V. she did not want to have sex with him, but he continued to touch her until she was able to move away and get off the couch.
>
> This evidence supported the inference that J.V. subjected the victim to the unwanted skin-on-skin touching by means of physical force. By pushing her onto the couch, he was able to force himself on her until she was able to get away. Thus, the unlawful restraint was "'something more than the exertion of physical effort required to commit the prohibited sexual act.'" (*Arnold*, *supra*, 6 Cal.App.4th at p. 28.) The evidence was thus sufficient to support the court's

> finding that J.V. committed sexual battery by restraint in violation of section 243.4, subdivision (a).

(Ex. A, at *15-*17.)

When the evidence in this case is considered in the light most favorable to the prosecution, it is sufficient to establish unlawful restraint. Petitioner approached the victim at her home and repeatedly requested that she have sex with him. Over the victim's protest, Petitioner pushed her to the couch and forced himself on her by rubbing her buttocks and breasts both over and under her clothing, until she was able to escape. The evidence thus established Petitioner employed physical force as a means to accomplish the prohibited touching. Under these circumstances, the jury could have reasonably concluded that Petitioner exercised restraint over the victim for an unlawful purpose, and he exerted more physical effort than was necessary to commit the sexual battery itself. In light of this evidence, there was a sufficient basis for reasonable jurists to find beyond a reasonable doubt that Petitioner was guilty of sexual battery by restraint.

IV. Admission of Evidence Claim/Ineffective Assistance of Appellate Counsel

Petitioner contends the court improperly relied on the content of the victim's cellular phone tape-recording during the incident which was not admitted into evidence. Petitioner further claims that appellate counsel was ineffective for failing to raise this claim on direct appeal.

Petitioner raised these claims by way of a habeas corpus petition to the California Supreme Court, which denied relief without comment. (Lod. Doc. 7.)

A. Trial Court Proceedings

A contested jurisdictional hearing took place on November 13, 2008, at which time the victim testified that she began to record Petitioner after he would not stop bugging her to have sex with him. She explained the recording depicted Petitioner begging for sex in a covert manner, and he was touching her and pushing her toward the couch. During the two-minute recording, Petitioner was heard asking the victim if she "wanted to bust a 69. He asked [her] if [she] wanted

///

///

to take it from the back. He asked [her] if he could touch [her]." Petitioner's counsel did not

object to this testimony.

On cross-examination, Petitioner's counsel questioned the victim about the recording and she provided a detailed description of how to record using her cell phone.

On redirect examination, the victim indicated that she still had the recording on her cell phone. In response, the prosecutor sought to have the recording played for the judge. However, Petitioner's counsel objected on foundational grounds and chain of custody concerns. Counsel also cited a local discovery rule and claimed the prosecutor did not provide a copy of the transcript from the recording. Defense counsel acknowledged that the prosecutor provided a copy of the recording which she was able to play. However, counsel asserted the recording was muffled and there was no way to verify when the recording took place.

The trial court sustained Petitioner's counsel's objection and the tape was not admitted into evidence or played for the court. The court explained that because the parties agreed a recording took place, the contends of the recording would not be "all that informative."

Later in the proceedings, in determining that Petitioner was guilty of all three counts, the court addressed the issue of the two witnesses' credibility, stating:

> First of all, in terms of credibility, the uncontested fact is that she did tape something on there. That's been uncontested. The contents of that was not allowed because of discovery, but there is no question that it was taped. And – and the fact that she taped it shows that she had - was apprehensive about what was going on: Why would she tape that? And there is just no question that it was taped. That it really not a "he said/she said," it is really she did something. Even though she didn't call 911, she did something.
>
> There is no question that it took force. She obviously did it right because we know that there was something on that tape and presumably we can assume that what was on the tape is what she said. We haven't heard that, and, of course, there was an objection to that because it was not received before, but the contents of it, the actual contents of it, we don't know what was said, but we can assume that it was a tape of what was going on at that point, and the fact she taped it means that she was apprehensive. So that goes against the issue of consent.

(Lod. Doc. 2, at 64.)

///

///

B. State Court Adjudication on Merits was Reasonable

Generally, the admissibility of evidence is a matter of state law, and is not reviewable in a federal habeas corpus proceeding. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir.), *cert. denied,* 478 U.S. 1021 (1985). Nevertheless, there can be habeas relief for the admission of prejudicial evidence if the admission was fundamentally unfair and resulted in a denial of due process. Estelle, 502 U.S. at 72; Pulley v. Harris, 465 U.S. 37, 41 (1984); Walters v. Maas, 45 F.3d 1355, 1357 (9th Cir. 1995); Jeffries v. Blodgett, 5 F.3d 1180, 1192 (9th Cir. 1993), *cert. denied*, 510 U.S. 1191, 114 S.Ct. 1294 (1994); Gordon v. Duran, 895 F.2d 610, 613 (9th Cir.1990). However, the failure to comply with state rules of evidence alone is neither a necessary nor a sufficient basis for granting federal habeas relief on due process grounds. Jammal v. Van de Kamp, 926 F.2d 918, 919-920 (9th Cir. 1991). Only if there are no permissible inferences that the jury may draw from the evidence can its admission rise to the level of a due process violation. Id. at 920.

In his state habeas corpus petition, Petitioner argued the trial court considered the contents of the audio recording that was not admitted into evidence. However, the state court could have reasonably found that Petitioner's claim was not correct, given that the record demonstrates the juvenile court did not base its ruling on the contents of the tape. Rather, the court specifically stated that the contents would not be "all that informative," and the court considered the uncontested fact that a tape recording existed as evidence in order to assess the witnesses' credibility-a contested issue. The fact that the victim tape recorded a portion of the incident, without regard to the actual content, tended to corroborate her testimony. As previously mentioned, the victim testified that Petitioner begged her for sex, pushed her on the couch, began groping her under her clothing, and only stopped when she was able to get away from him. In contrast, Petitioner testified that the victim invited him to her house, begged him for sex, engaged in consensual sex with him, and was upset when Petitioner abruptly left. Given the conflicting accounts of what took place, the court was required to assess and determine which witnesses' testimony was more credible. Because the trial court did not err in admitting this evidence, appellate counsel could not have rendered ineffective assistance for failing to raise this claim on

appeal.[2] See James v. Borg, 24 F.3d 20, 27 (9th Cir. 1994) ("Counsel's failure to make a futile motion does not constitute ineffective assistance of counsel.") (citations omitted); Shah v. United States, 878 F.2d 1156, 1162 (9th Cir. 1989) ("The failure to raise a meritless argument does not constitute ineffective assistance of counsel." ) (citation omitted); Boag v. Raines, 769 F.2d 1341, 1344 (9th Cir. 1985) (same).

V. Certificate of Appealability

A state prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, and an appeal is only allowed in certain circumstances. Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003). The controlling statute in determining whether to issue a certificate of appealability is 28 U.S.C. § 2253, which provides as follows:

> (a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.
>
> (b) There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.
>
> (c) (1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from–
>
> (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
>
> (B) the final order in a proceeding under section 2255.
>
> (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.
>
> (3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

---

[2] Effective assistance of appellate counsel is guaranteed by the Due Process Clause of the Fourteenth Amendment. Evitts v. Lucey, 469 U.S. 387, 391-405 (1985). Claims of ineffective assistance of appellate counsel are reviewed according to Strickland 's two-pronged test. Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir.1989); United States v. Birtle, 792 F.2d 846, 847 (9th Cir.1986). To prevail, Petitioner must show two things. First, he must establish that appellate counsel's deficient performance fell below an objective standard of reasonableness under prevailing professional norms. Strickland v. Washington, 466 U.S. 668, 687-88, 104 S.Ct. 2052, 2064 (1984). Second, Petitioner must establish that he suffered prejudice in that there was a reasonable probability that, but for counsel's unprofessional errors, she would have prevailed on appeal. Id. at 694.

If a court denies a petitioner's petition, the court may only issue a certificate of appealability "if jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El, 537 U.S. at 327; Slack v. McDaniel, 529 U.S. 473, 484 (2000). While the petitioner is not required to prove the merits of his case, he must demonstrate "something more than the absence of frivolity or the existence of mere good faith on his . . . part." Miller-El, 537 U.S. at 338.

In the present case, the Court finds that reasonable jurists would not find the Court's determination that Petitioner is not entitled to federal habeas corpus relief debatable, wrong, or deserving of encouragement to proceed further. Petitioner has not made the required substantial showing of the denial of a constitutional right. Accordingly, the Court hereby DECLINES to issue a certificate of appealability.

ORDER

Based on the foregoing, it is HEREBY ORDERED that:

1. The instant petition for writ of habeas corpus is DENIED;

2. The Clerk of Court is directed to enter judgment in favor of Respondent; and

3. The Court declines to issue a certificate of appealability.

IT IS SO ORDERED.

**Dated: October 29, 2012**

/s/ **Barbara A. McAuliffe**
UNITED STATES MAGISTRATE JUDGE